**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MICHAEL ALAN CROOKER,                    *

Petitioner                               *

v                                        *          Civil Action No. ELH-14-1539

TIMOTHY STEWART,                         *

Respondent                               *
                                     ***

**MEMORANDUM**

Michael Crooker, the self-represented petitioner, is a prisoner confined to the custody of the Federal Bureau of Prisons ("BOP") and currently assigned to the Federal Correctional Institution ("FCI") in Cumberland, Maryland.  While Crooker was held at the Federal Medical Center, Devens ("FMC"), in Massachusetts, he was subjected to drug testing and subsequently charged with use of a narcotic not prescribed by medical staff.  As a disciplinary sanction for his unauthorized use of narcotics, Crooker was disallowed 41 days of good conduct time ("GCT").  Claiming that he was denied due process in connection with that drug testing, Crooker has filed a petition for habeas corpus relief (ECF 1), which he has supplemented.  ECF 3.  Crooker asks the court to reverse the disciplinary proceedings and, *inter alia*, to restore his GCT and reinstate his visiting privileges.  ECF 1 at 5.[1]

Respondent, Warden Timothy Stewart, has filed a motion to dismiss or for summary judgment (ECF 4), along with a Memorandum of Law and numerous exhibits (collectively, the

---

[1] The Court has generally cited to ECF page numbers, which do not always correspond to the page numbers on the documents.

"Motion"). Crooker opposed the motion, ECF 6, and respondent replied.  ECF 7.  Moreover, Crooker filed a rebuttal (ECF 8)[2] and another opposition.  ECF 9.

No hearing is necessary to resolve the matter. *See* Local Rule 105.6. For the reasons that follow, the habeas corpus petition shall be denied and a certificate of appealability shall not issue.

### Factual Background

On June 20, 2011, the United States District Court for the District of Massachusetts sentenced Crooker to a term of  180 months imprisonment for his violation of 18 U.S.C. § 876(c) (Mailing a Threatening Communication) and 18 U.S.C. § 175b(c)(1) (Possession of Toxin without Registration). ECF 4-2 at 2 & 4-3 at 3.

On August 23, 2013, while incarcerated at FMC Devens, Crooker initiated an interview with a BOP psychologist regarding substance abuse. ECF 3 at 4.  On August 25, 2013, at the request of staff, Crooker provided a urine sample.  ECF 4-2 at 2 & ECF 4-5 at 2.  The urinalysis was returned to the Special Investigative Services ("SIS") office on September 6, 2013, noting a positive result for the presence of morphine.  *Id*.  FMC Devens staff reported to SIS staff that Crooker's prescription for morphine had expired on July 26, 2013, and would not have resulted in a positive urinalysis on August 25, 2013.  *Id*.

As a result of the positive urinalysis, Crooker was served with notice of rule infraction on September 10, 2013.  At that time, he was provided a copy of the incident report and advised of his rights.  ECF 4-2 at 2; ECF 4-5 at 3.  The infraction was referred to a Disciplinary Hearing Officer ("DHO") due to the seriousness of the charge, which carried the possible loss of good conduct time.  ECF 4-2 at 3. On September 17, 2013, Crooker was given written notice of the

---

[2] ECF 8 also includes a motion for leave to file a rebuttal, which is granted.

DHO hearing and the charges against him and advised of his rights.  ECF 4-2 at 3; ECF 4-6; ECF 4-7.

Crooker's hearing before the DHO was conducted on October 2, 2013. ECF 4-2 at 3 & ECF 4-8.  Crooker waived his right to call witnesses and to have a staff representative. ECF 4-2 at 3; ECF 4-6; ECF 4-7; ECF 4-8.  Crooker did not raise any challenges to the procedural matters during the hearing.  ECF 4-2 at 3 & ECF 4-8 at 2.  The DHO considered the evidence presented, which included the reporting officer's statement contained in the incident report as well as Crooker's statement that he was pleading guilty, but believed he should have been charged with a lesser offense because he informed staff of his drug addiction.  ECF 4-8 at 2-3.

Crooker was found guilty of violating prohibited code 112, Use of Any Narcotic Not Prescribed by Medical Staff. ECF 4-2 at 4 and ECF 4-8 at 4.  In so finding, the DHO relied upon Crooker's urine sample of August 25, 2013, the chain of custody form signed by Crooker, the positive urinalysis, the written documentation from the pharmacy staff that his prescription for morphine expired on July 26, 2013, Crooker's lack of a valid prescription that would have caused a positive test for morphine at the time the test was administered, and Crooker's own statement that he was guilty.  *Id.*  The DHO dismissed Crooker's argument that he should receive a lesser charge for turning himself in, noting that it did not relieve him of the responsibility of testing positive for morphine.  *Id.*

Crooker was sanctioned with 30 days of disciplinary segregation and the loss of 41 days of  GCT. Crooker was also sanctioned with the loss of six months of visiting privileges, and an additional six months of visitation were restricted to immediate family. *Id.*

**Standard of Review**

Respondent's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[3]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not

---

[3] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods,* 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f)

[now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Crooker has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address Respondent's motion as one for summary judgment, as it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As the Fourth Circuit recently observed, Fed. R. Civ. P. 56 "is a mechanism to obviate trial . . . ." *Boyer-Liberto v. Fontainbleau Corp.*, 752 F.3d 350, 355 (2014), *rehearing en banc granted* (July 1, 2014).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine

issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Moreover, the court may not make credibility determinations on summary judgment. *Black v. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Discussion

The crux of Crooker's claim is that a BOP psychologist, despite advising petitioner that nothing was truly confidential in the prison context, should not have disclosed to BOP staff his

suspicion that petitioner was using controlled substances.   ECF 1 at 6 & 10; ECF 3 at 4. Respondent maintains that Crooker received all process that was due.[4]

Crooker's claim that his due process rights were violated lacks merit.   Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply.   *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).

The basic due process standards applicable to a prison disciplinary proceeding are set forth in *Wolff*, 418 U.S. 539.  As the Supreme Court explained in *Wolff*, although prisoners "may not be deprived of life, liberty or property without due process of law," their due process rights remain "subject to restrictions imposed by nature of the regime to which they have been lawfully committed." *Id.* at 556.   Accordingly, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.*

Nevertheless, in prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a hearing where he is afforded the right to call

---

[4] Respondent further maintains that any claim for damages based upon violation of the patient/psychologist privilege is not properly before the court, as the current case is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  The court agrees.  Crooker is free to file a separate civil rights action against the therapist.   Nevertheless, the Fourth Circuit has rejected the contention that 42 U.S.C. §290dd-2 can serve as a basis for such a claim.  *See Doe v. Broderick*, 225 F.3d 440, 446-51 (4th Cir. 2000) (holding substance abuse clinic patient could not maintain §1983 action against police detective for violating patient's Fourth Amendment and federal statutory rights regarding disclosure of drug treatment records when detective searched patient's confidential treatment records, as statute limiting disclosure of records did not create individual entitlements which could be enforced via §1983).

witnesses and present evidence, so long as doing so is not "unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) an impartial decision-maker and a written statement of the evidence relied on and the reasons for taking any disciplinary action. *See Wolff*, 418 U.S. at 564-571. However, there is no constitutional right to confront and cross-examine witnesses, nor a right to counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004).

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985); *see Baxter*, 425 U.S. at 323 n. 5. A disciplinary hearing officer's findings of fact will be disturbed only when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Crooker's claim that his due process rights were violated when his "privileged" communication with the psychologist was relied upon to institute the urinalysis is without merit. There is no indication that the DHO relied on the psychologist's statement in finding "some evidence" to support a finding of guilt. Moreover, Crooker voluntarily spoke of his drug use to the psychologist. The psychologist advised Crooker that any information he provided could be passed along to other BOP staff.

To the extent Crooker bases his claim on violation of a BOP Program Statement, common law, state law, or ethical codes concerning psychotherapist-patient privilege, such claims are unavailing, as these laws and regulations are not federal laws, much less constitutional

rights.  A habeas claim cannot be sustained based solely upon the BOP's violation of its own program statement. *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011); *Russell v. Caraway*, 2012 WL 5510999 at *5 (D. Md. Nov. 13, 2012).

Crooker's reliance on 42 U.S.C. §290dd-2, which limits the disclosure of records of substance abuse programs and which provides for criminal penalties for those who violate the act, fares  no better.  Crooker has not demonstrated that he was protected under the Act. As noted, he was specifically advised that his disclosures to the psychologist were not confidential.  Further, he has failed to allege, much less demonstrate, that he was participating in a substance abuse program covered by the Act.  Additionally, and perhaps most fatal to Crooker's claim, the Act prohibits the use of substance abuse records in "initiat[ing] or substantiat[ing] any **criminal charges** against a patient or to conduct any [criminal] investigation of a patient." (Emphasis supplied).  Crooker was not prosecuted for his drug use.

Regulations promulgated to enforce the statute confirm that the statute restricts the "use of information to initiate or substantiate any criminal charges against a patient or to conduct any criminal investigation of a patient." 42 C.F.R. § 2.12(a)(2).  As indicated, no criminal charges were brought against Crooker as a result of the alleged disclosure of his confidential records.

Moreover, even if the statute were violated, as noted above, the exclusionary rule does not apply to prison disciplinary proceedings.  Even assuming, *arguendo*, that the psychologist violated Crooker's right to privacy, he would not be entitled to relief.  Evidence seized as a result of that violation would not be subject to suppression at the DHO hearing as the exclusionary rule does not apply in prison disciplinary proceedings.  *See Fuller v. Washington Cnty. Hosps*. 2006 WL 4571279 (D. Md. May 23, 2006); *see also Neree v. O'Hara*, 2011 WL 3841551, at 811

(N.D.N.Y. July 20, 2011) (collecting cases rejecting the application of the exclusionary rule and the "fruit of the poisonous tree" doctrine to prison disciplinary proceedings.").

The exclusionary rule is a judicially created rule developed as a remedy for Fourth Amendment violations committed by law enforcement.  *See, e.g., Davis v. United States,* ____ U.S. ____, 131 S. Ct. 2419 (2011).  In general, subject to the good faith doctrine, the rule bars the admission of evidence obtained as a result of an illegal search or seizure.  *Id.*  The rule, however, has "never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone v. Powell*, 428 U.S. 465, 486 (1976).  In rejecting its application in parole revocations hearings the Supreme Court noted that it had "repeatedly declined" to apply the rule in proceedings other than criminal trials. *Pennsylvania Board of Probation & Parole v. Scott*, 524 U.S. 357, 363-64 (1998).  In rejecting the application of the exclusionary rule to parole revocation hearings, the Court noted the informal nature of revocation proceedings and expressed concern that application of the exclusionary rule would impose undue burdens on parole officials.  Additionally, the Court noted that, because parole is incident to imprisonment, the interest in protecting the public from convicted felons mitigated against application of the exclusionary rule in that context. *Id*. at 364-67.

These factors are even more relevant in the prison disciplinary context.  Like parole revocation, prison disciplinary proceedings are less formal administrative procedures.  Indeed, prison disciplinary proceedings are civil in nature. *See United States v. Mayes*, 158 F.3d 1215, 1222-23 (11th Cir.1998); *United States v. Brown*, 59 F.3d 102, 103-05 (9th Cir.1995); *United States v. Hernandez-Fundora*, 58 F.3d 802, 806-07 (2d. Cir.1995); *United States v. Newby*, 11 F.3d 1143, 1144-46 (3rd Cir.1993).  If the exclusionary rule were applied, it would increase the complexity of the proceedings, imposing significant burdens on prison officials.

In any event, the DHO did not rely on the records of Crooker's treatment or any disclosure by the psychologist. Rather, the DHO relied on other evidence, including Crooker's admission of guilt in finding he violated the prison rules.

Crooker's reliance on 42 C.F.R. § 2.13(a), which provides that qualifying patient records, absent certain exceptions, may not "be disclosed or used in any civil, criminal, administrative, or legislative proceedings conducted by any Federal, State or local authority," also fails.  Again, Crooker offers no evidence that the BOP's psychologist is governed by these regulations. Further, these broad regulations permit disclosures "within a program or between a program and an entity having direct administrative control over that program" and also permit disclosure from "program personnel to law enforcement officers which...[a]re directly related to a patient's commission of a crime on the premises of the program...." 42 C.F.R. §§ 2.12(c)(3) &(c)(5). Assuming Crooker was enrolled in a qualifying program, and that the program was governed by these regulations, it appears that, under the exceptions to the regulation, the psychologist was free to disclose Crooker's suspected drug use under both exceptions.

In sum, even if Crooker's rights were violated under the regulation, the evidence would not be subject to suppression, and it remains that he was provided all substantive and procedural process he was due.

This court's role is not to afford a de novo review of the DHO's findings.  Rather, the court must determine whether the decision was supported by some evidence.  Crooker, who admitted his guilt,  cannot dispute that there was "some evidence" to support the guilty finding by the DHO and that he received all of the procedural process he was due.  Thus, based on the undisputed facts before the court, respondent is entitled to summary judgment.

Crooker has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (requiring petitioner to demonstrate reasonable jurists may differ); *Miller-El v. Cockrell*, 537 U.S. 327 (2003) (issues presented are adequate to deserve encouragement to proceed further).

A separate Order follows.


December 16, 2014__                          _____/s/_____
Date                                                    Ellen L. Hollander
                                                            United States District Judge

13